OPINION
{¶ 1} Defendant-Appellant Brett Hawke appeals his conviction and sentence for assault and theft. On appeal Hawke argues that his convictions were against the manifest weight of the evidence and that there was insufficient evidence to support either conviction. After a thorough review of the record, we affirm the judgment of the trial court.
 I {¶ 2} Shortly before midnight on March 16, 2005 Hawke and his girlfriend, Charisse Rosenberger, went to a bar together. There they drank and danced for a couple of hours before returning to Hawke's home, where he lives with his mother. During the drive home, Hawke began to chastise Rosenberger for paying too little attention to him and for not treating him like her boyfriend.
 {¶ 3} After the two arrived at Hawke's home, they undressed and got into bed, where the argument continued. When Rosenberger decided that she wanted to go home, Hawke pushed her on the bed and told her that she was not leaving. Each time that Rosenberger tried to get up, Hawke pushed her back onto the bed. When Rosenberger was able to get up, she reached for her phone to call her father. Hawke grabbed the phone from Rosenberger's hands and turned it off, but she did not see what he did with it. Hawke said that he put the phone on the bed and told her that he would take her home, but she wanted her father to pick her up. Rosenberger repeatedly yelled at Hawke to give the phone back, but he refused. Rosenberger tried to get dressed, but Hawke kept pushing her, ripping her shirt. Hawke threw Rosenberger onto the bed by her neck and began choking her. Rosenberger kept yelling for Hawke to stop and to get off of her. Suddenly, Hawke let go of Rosenberger and began apologizing. Rosenberger kicked Hawke off of her, grabbed her clothes, and left the room. As she left the room, Hawke threw a cup of pop at her.
 {¶ 4} Hawke's mother heard Rosenberger telling Hawke to get off of her, but she claimed not to have heard any argument. Rosenberger testified that Hawke's mother asked if she needed to call the police again. Mrs. Hawke claimed to have been joking, and Hawke denied that the question was asked. Rosenberger's father stated that Mrs. Hawke called to tell him to come to pick up his daughter, but Mrs. Hawke denied that too.
 {¶ 5} Rosenberger went downstairs, called her father, and spoke briefly with Mrs. Hawke. In the meantime, Hawke had called the police. He came down the stairs yelling and complaining that his mother and Rosenberger were talking about him. Hawke grabbed Rosenberger by the shoulders and pushed her out the door.
 {¶ 6} Officer Daley arrived and Rosenberger flagged him down. After a brief conversation with Rosenberger, Officer Daley spoke with Hawke and asked him to look for the cell phone. At first Hawke denied having the phone. Then he tried to call, but the phone was turned off, so it could not be heard ringing. Hawke and his mother looked for the phone but they could not find it.
 {¶ 7} Rosenberger and her father returned to their home and Rosenberger's mother called the police. Officer Curley arrived to take Rosenberger's statement. Rosenberger had red marks on her wrist and neck and a bruise on her leg from her altercation with Hawke.
 {¶ 8} Later that morning Hawke sent text messages to Rosenberger on another family phone to apologize and offering to return her phone. But when Rosenberger tried to get her phone back, Hawke told her that he still could not find it. A couple of weeks later, Rosenberger bought herself a new phone and made no further attempts to get her old phone back. Soon after that, Hawke told her that he had found her phone behind his bed. At the time of trial, Hawke was still in possession of Rosenberger's phone.
 {¶ 9} That night Rosenberger's friend, Tosha Lute, spoke with Hawke at another bar. Regarding the fight with Rosenberger, Hawke admitted to Lute, "you know I was pretty stupid, I shouldn't have done it, I'm sorry for it." Lute walked away from Hawke, ending the brief conversation. A week or more later, Mrs. Hawke called Rosenberger to apologize for her son's conduct. Rosenberger put the call on speaker phone so that Lute could listen.
 {¶ 10} As a result of the March 17th incident, Hawke was charged with assault, theft, and disorderly conduct. Following a jury trial, Hawke was found guilty of assault and theft, and the disorderly conduct charge was dismissed. He was sentenced accordingly, and now appeals his conviction and sentence.
 II {¶ 11} Hawke's Assignment of Error:
 {¶ 12} "THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY, AS THE VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} In his sole assignment of error, Hawkes argues that his convictions were not supported by sufficient evidence and that they were against the manifest weight of the evidence. We disagree.
 {¶ 14} As we discussed at length in State v. Hufnagel
(Sept. 6, 1996), Montgomery App. No. 15563, two distinct standards apply to manifest weight and sufficiency of the evidence claims. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." In contrast, when reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." Thompkins, supra, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 15} Hawke was convicted of both assault and theft. An assault occurs when a defendant knowingly causes or attempts to cause physical harm to another. R.C. § 2903.13(A). Interestingly, both Hawke and the State base their arguments on R.C. §2903.13(B), which states that "No person shall recklessly cause serious physical harm to another." However, Hawke was indicted under R.C. § 2903.12(A), not (B). Moreover, the jury was instructed pursuant to R.C. § 2903.13(A), not (B).
 {¶ 16} Rosenberger, police, her parents, and her friends saw red marks and bruises on Rosenberger's neck, wrist, and leg. The State offered photos of those marks, and Rosenberger testified that the injuries caused her pain. While none of those injuries rise to the level of serious physical harm as required by R.C. §2903.13(B), they do constitute physical harm as set forth in R.C. § 2903.13(A). Accordingly, there was sufficient evidence to warrant submitting the assault case to the jury, and there is no reason to believe that the jury lost its way while deliberating on the assault charge.
 {¶ 17} Hawke was also convicted of theft under R.C. §2913.02(A)(1), which states "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [w]ithout the consent of the owner or person authorized to give consent". Hawke claims that he did not intend to deprive Rosenberger of her property.
 {¶ 18} Deprive means to "[w]ithhold property of another permanently, or for such a period as to appropriate a substantial portion of its value or use. . . ." R.C. § 2913.01(C)(1). Rosenberger testified that she did not give Hawke permission to take or keep her phone. To the contrary, she repeatedly asked him to return the phone, and she continued to seek the phone's return when the police arrived. Moreover, Rosenberger tried unsuccessfully for a couple of weeks to get her phone back before she gave up and bought a new phone.
Hawke later told her that he found the first phone, but by the time of trial, Hawke was still in possession of Rosenberger's phone.
 {¶ 19} Therefore, the State offered sufficient evidence of the theft of the phone to send the matter to the jury. Similarly, under the facts of this case, the jury could have made a reasonable inference that when Hawke grabbed Rosenberger's phone, it was his purpose to deprive Rosenberger of her phone.
 {¶ 20} Hawke's sole assignment of error will be overruled.
 III {¶ 21} Having overruled Hawke's Assignment of Error, the judgment of the trial court will be affirmed.
Grady, P.J. and Walters, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).